United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY MOSES MITCHELL,<br><br>    Plaintiff,<br><br>    v.<br><br>PENNINGTON, et al.,<br><br>    Defendants. | Case No. 21-cv-06247-WHO (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Dkt. Nos. 14 and 19 |

**INTRODUCTION**

Plaintiff Henry Moses Mitchell, aka Henry C. Hayes, alleges in this 42 U.S.C. § 1983 suit that prison staff refused to issue him books that he ordered for a divinity class, thereby violating his free exercise of religion rights under the First Amendment. Mitchell has filed a motion for summary judgment, defendants have filed a cross-motion for summary judgment, Mitchell has filed objections to defendants' motion, and defendants have filed a reply.

Summary judgment will be granted in defendants' favor because the undisputed record shows that Mitchell's right to free exercise was not substantially burdened by defendants' conduct. Mitchell could have exchanged four of the books he already had for the four he ordered; defendants merely asked him to do so. Furthermore, defendants are entitled to qualified immunity. Accordingly, defendants' motion for summary judgment is GRANTED, and Mitchell's motion for summary judgment is DENIED.

**BACKGROUND**

Mitchell is a California state prisoner who was housed at Pelican Bay State Prison when the alleged events giving rise to this suit occurred. The following summary is based on his allegations. He ordered four books for a class ("Foundations of Moral Theology") that he was taking as part of his Master of Divinity coursework. (Compl., Dkt. No. 1 at 3.) On January 3, 2021, he was called out of his cell to obtain the books from correctional officers Pennington and Pearcey. (*Id.*) Defendant Pennington "stated that he needed me to provide one-for one exchange books in order to obtain the textbooks that were ordered from Christian Book Distributors." (*Id.*) Mitchell told him that he was "excluded from the one-for-one policy due to his written notice from the Receiving and Release Sergeant on October 25, 2020, which stated 'school books will not count as your 10.'" (*Id.*) According to Mitchell, Pennington, after seeing this document, "screamed these are 'Christian' Books!" (*Id.*) Mitchell showed him his course syllabus, which listed the books he ordered as required for the course. (*Id.*) After Pennington said that Mitchell could not take such a course without prison approval, Mitchell showed him a "written notice of the Proctor Agreement signed by Pelican Bay State Prison Educational Department." (*Id.*) Pennington then said that he was refusing to issue the books and would leave the matter to Receiving and Release (R & R) to resolve. (*Id.*) Mitchell alleges that by denying him the books he ordered, Pennington and Pearcey violated his First Amendment right to the free exercise of religion.[1]

Defendants offer a slightly different version of events. Neither defendant recalls interacting with Mitchell on January 3, 2021. (Defs.' Mot. for Summ. J. (DMSJ), Dkt. No. 19 at 5.) Pennington does recall that on some date he and Pearcey entered the day room to

---

[1] In one of his filings, Mitchell describes himself as an "Apostolic, [which is] a Non-Protestant faith . . . [and] a branch of Reform Judaism." (Pl.'s Objections to DMSJ, Dkt. No. 20 at 3.) At his deposition, Mitchell was asked, "Do you adhere to a specific Christian denomination?" (Reply, Mitchell Depo., Dkt. No. 23-1 at 5.) He replied, "I would not say that I adhere to a traditional Christian denomination. My theology is as an originalist. Meaning that what the scripture dictates that's the doctrine in which I follow. In other words, not so much I'm a Baptist or Methodist; I'm an Episcopalian. That type of thing." (*Id.* at 6.)

1  deliver packages to prisoners, and that he had a book to deliver to Mitchell, but he does not
2  remember anything about the book. (*Id.*)  When he looked at Mitchell's property card, he
3  noticed that if he gave plaintiff his book, the ten-book limit would have been exceeded.
4  Plaintiff said the book was for an educational course. (*Id.*)  Rather than argue with him,
5  Pennington brought the book to R & R and asked whether Mitchell was enrolled in a
6  course.  The R & R officer said that Mitchell was not enrolled in a course. (*Id.*)
7  Pennington left the book with R & R for return to the vendor. (*Id.*)

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c).  The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91

1  F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with
2  reasonable particularity, the evidence that precludes summary judgment. *Id.* If the
3  nonmoving party fails to make this showing, "the moving party is entitled to a judgment as
4  a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## DISCUSSION

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015.) "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks and alterations omitted)).

Prisoners retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). But a prisoner's right to free exercise of religion "is necessarily limited by the fact of incarceration," *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1993) (citing *O'Lone*, 482 U.S. at 348). "To ensure that courts afford appropriate deference to prison officials," the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349. The challenged conduct "is valid if it is reasonably related to legitimate penological interests." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

**i.     Defendants' Motion for Summary Judgment**

The parties dispute whether the denial of the books (and thereby perhaps denying him the opportunity to take his class) violated a tenet of his religion. Defendants contend that "[t]here is no First Amendment right for an inmate to take an academic course

4

concerning religious topics, or to obtain a religious degree. Denial of the textbooks may have interfered with Mitchell's Masters of Divinity course, but Mitchell does not claim he was coerced to forego the practice of his Christian religious beliefs." (DMSJ, Dkt. No. 19 at 7.)

Mitchell contends that "[i]t is ecclesiastical policy of certain religions that one must attain a certain level of religious education or training before one may hold a position within that organization. This is what constitutes the requirement of a degree to practice one[']s religion." (Pl.'s Objections to DMSJ, Dkt. No. 20 at 10.) He then goes on to cite a Bible verse which advocates study: "'Study to show thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth.'" [Second Epistle of Paul to Timothy, Chapter 2, Verse 15]." (*Id.* at 11.)

Viewing the facts in the light most favorable to the plaintiff, I assume without deciding that the denial of the books violated a tenet of Mitchell's religion. But even on these facts, defendants did not place a burden so substantial that it "must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno*, 723 F.3d at 1011. Mitchell had an alternative means of exercising the right to free exercise. He simply could have given up four books from his collection of ten, and obtained the books he ordered. *See, e.g., Zajrael v. Harmon*, No. 2:07-cv-00158-JMM-JJV, 2010 WL 4823232 at *2, *4, *6 (E.D. Ark. Nov. 10, 2010) (inmate challenged confiscation of numerous religious books, arguing that he was a member of numerous Islamic sects and was required to educate himself about each; court ruled that confiscation did not substantially burden religious exercise because 10 to 15 texts, including the Bible and Quran, remained in Plaintiff's cell, and Plaintiff was permitted to acquire new books provided that he surrendered books in his possession). It is undisputed that the opportunity was open and was offered to him, and nowhere does he contend that giving up four books from his collection would have burdened his exercise of his religion, or made him unable to complete his coursework. Accordingly, defendants' summary judgment motion is

5

1 GRANTED.

2 **ii.     Plaintiff's Motion for Summary Judgment**

Mitchell contends he had a "protected liberty interest" in having the books he ordered.  (PMSJ, Dkt. No. 14 at 8.)  This liberty interest was "created by regulation for the benefit of incarcerated person[s] seeking education through rehabilitation through education." (*Id.*)  Therefore, he was "entitled to acquire and possess religious school books." (*Id.*)  He contends that because the books he ordered were for school coursework, they were exceptions to the ten-book limit and should have been allowed.  (*Id.* at 5.)

Mitchell's contentions are not on point.  The claim at issue in this suit is not about a liberty interest, but rather one of free exercise of religion.  A liberty interest involves different questions of law (*see e.g., Sandin v. Conner*, 515 U.S. 472 (1995)) and was not a claim found cognizable in the complaint.

Moreover, even if Mitchell had pursued the free exercise claim in his motion for summary judgment, it would not have been successful.  As noted above, on the undisputed facts his right to free exercise was not substantially burdened.  He could have given up books in his collection to obtain the four he ordered.  It is undisputed that the opportunity was open and offered to him, and nowhere does he contend that giving up four books from his collection would have burdened his exercise of his religion, or made him unable to complete his coursework.  Mitchell's motion for summary judgment is DENIED.

**iii.    Qualified Immunity**

Defendants contend that they are entitled to qualified immunity.  The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To determine whether an official is entitled to qualified immunity, the court must decide whether the facts alleged show the official's conduct violated a constitutional right; and, if so, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); see also

6

*Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling *Saucier*'s requirement that qualified immunity analysis proceed in a particular sequence). "[I]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

Defendants are entitled to qualified immunity. The undisputed facts show that defendants did not substantially burden Mitchell's exercise of religion. And it would not be clear to a reasonable officer that he was violating Mitchell's free exercise rights when Mitchell was offered the opportunity to have the books he wanted, and only had to exchange ones he already possessed to obtain them.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED. Plaintiff Mitchell's motion for summary judgment is DENIED. The Clerk shall terminate all pending motions, enter judgment in favor of defendants, and close the file.

**IT IS SO ORDERED.**

**Dated:** March 29, 2023



WILLIAM H. ORRICK
United States District Judge